McRae *v.* BENNETT.

Estoppel—Representations as to Title.

A representation by A. to B. that certain lumber is the property of C., thereby inducing B. to bring an action for conversion against C. instead of A., will not estop A. from thereafter asserting title to the lumber, upon which B. has levied under his judgment against C., where B. had no valid claim against either A. or C.

Error to Marquette; Stone, J. Submitted April 15, 1897. Decided May 25, 1897.

Replevin by Peter McRae against Samuel Bennett, deputy sheriff of Marquette county. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*Hill & Rood*, for appellant.

*George Gallup*, for appellee.

Hooker, J. McRae owned timber, which Girard engaged to cut and manufacture into lumber. Bellaire attached it in a proceeding against Girard on a labor claim, and took judgment by default. He bid in 400 logs, said to have been worth $1,200, at execution sale, for $98. The logs were not taken into his possession, and Girard manufactured them into lumber. Previous to the attachment, McRae made a bill of sale absolute in form to McArthur Bros. Co. of this and other timber as security for $38,000. An effort was made to replevy this property in the name of McArthur Bros. Co. before the sale on execution, but the sale was made before it could be

done. Subsequently Bellaire brought his action by attachment against McArthur Bros. Co. for the conversion of the 400 logs, which had been manufactured by Girard into lumber, and the lumber intermingled with the lumber from other logs which McRae had assigned, as stated, to McArthur Bros. Co., and the property replevied in this case was seized by the defendant. McRae, having paid his indebtedness to McArther Bros. Co., thereby releasing the lumber from their claim, upon ascertaining that it was seized upon attachment against them for an alleged wrongful conversion, replevied it from the officer, and this is the case before us; the defendant, Bennett, having appealed from a judgment rendered against him on December 11, 1896. That McRae was the true owner of the lumber from the time it was felled to the time it was replevied seems to be clear, but counsel for the defendant attempt to justify the levy upon the ground that McArthur Bros. Co. were indebted to Bellaire, which they say the plaintiff cannot dispute, and that his levy upon this property must be treated as a levy upon McArthur Bros. Co.'s property by reason of the plaintiff's alleged admission that it did belong to McArthur Bros. Co., inasmuch as Bellaire was thereby induced to proceed against McArthur Bros. Co., instead of McRae, for the conversion of the lumber. Some time after the attachment, Bellaire took judgment against McArthur Bros. Co., who were not served with process and did not appear, for upwards of $1,000, upon the claim that they had converted his logs.

The alleged estoppel rests on the testimony of the witness Mead, who testified as follows: "I am an attorney, and reside at Escanaba. I know the plaintiff, and was requested, by letter from Hill & Rood, to call upon and see him.

"*Mr. Hill:* Have you that letter with you?

"*A.* Yes, sir." (Letter produced and received in evidence, and reads as follows:)

"William S. Hill, Lawyer, Marquette, Mich.
                    "Marquette, Mich., Sept. 2, 1895.
"F. D. Mead, Esq.,
          "Escanaba, Mich.
  "*Dear Sir:* There is a quantity of lumber at Little Lake on Northwestern road, which belongs to Peter McRae or McArthur Bros., of Canada. With this lumber has been mixed 80,000 feet belonging to our client. We wish to make a demand upon the owners of this lumber for our lumber, and, in case of refusal, to bring trover for its value. We wish you would see McRae, and if he claims to be owner of the lumber, or to be agent of McArthur Bros., and they prove to be the owners, make a demand upon him for it in the name of Ed. Bellaire.
                    "Yours truly,
                          "Hill & Rood."

*Witness:* "Upon receipt of this letter I saw Mr. McRae on the 3d of September, and made a demand on him for this lumber, and stated, I think, the substance of that letter. He said that he declined to surrender it. He said that the lumber belonged to McArthur Bros., and that he was their agent. He declined to surrender it. He said, I believe, that Mr. Bellaire had sold or obtained a judgment against the lumber, and that the sheriff had sold it, and he had no right to do it. Then half an hour afterwards, on the same day of the interview, I wrote this letter." . (Letter produced and received in evidence. Reads as follows:).

  "Law Office of Mead & Jennings, Escanaba, Mich.
                    "Sept. 3, 1895.
"Hill & Rood,
          "Marquette, Mich.
  "*Gentlemen:* Your favor of Sept. 2d at hand. I have seen Peter McRae. He says that the lumber belongs to McArthur Bros.; that he is their agent. I made a demand upon him in the name of Ed. Bellaire. He says that he understands that Bellaire has a judgment against Girard, and that you sold McArthur Bros.' lumber in satisfaction of it, and that you had no right to do so, and he declined to surrender the lumber. He says that he thinks Girard will settle your judgment, that he saw him a short time ago.
                    "Very truly,
                          "F. D. Mead."

Witness, proceeding further, testified: "At the time we were talking about this lumber, he stated that the lumber Bellaire had sold belonged to McArthur Bros., and that he had sold their lumber in satisfaction of the justice's court judgment. He stated that he thought that Girard would settle for the judgment. He had seen Girard about it. I then made a demand on him for the lumber, in accordance with your request in the matter, and he said he was agent for McArthur Bros., and this lumber belonged to them, and he declined to deliver it."

It is plain that Bellaire had no valid claim for conversion against either McArthur Bros. Co. or McRae, because he never owned the lumber, or the logs from which it was made. Had we before us the trover case against McArthur Bros. Co. it would not be contended that Bellaire could recover, and the same would be true had the action in trover been brought against McRae. To sustain their claim, counsel for the defendant find it necessary to contend—*First,* that McRae cannot question the validity of the judgment against McArthur Bros. Co.; and; *second,* that he cannot dispute their ownership of the property replevied. Incidentally they argue that the plaintiff must recover upon the strength of his own title, and not the weakness of the defendant's; that, as he is estopped from asserting title, he cannot recover in this case. The conversation between Mead and McRae related to Bellaire's claim of title to this lumber. Mead testified that McRae said that Bellaire had no valid claim to the lumber, and he (McRae) should not give it up. It was admittedly in his possession. Mead says that he told McRae that the demand was made upon the claim that Bellaire owned a part of this lumber, and it is plain that whatever was said by McRae was with the understanding that the action of trover was to be brought on that basis. He knew that Bellaire had no valid claim against either himself or McArthur Bros. Co. He cannot be supposed to have anticipated that any other claim would be set up. The property was attached for a tort, and he replevied it at

once.  The title might have been tried in that suit, but
Bellaire preferred to take a judgment on default against
parties who were not served with process, and who did
not own the property attached, as a matter of fact.
The only shadow of validity of that judgment is cast by
this alleged estoppel.  In order to prove the estoppel,
Bellaire had to prove that he was proposing to bring
an action of tort upon a claim totally devoid of merit.
He told the plaintiff he proposed to bring trover upon
a conversion of his logs, when he owned no logs, and
the plaintiff knew he had none.  He now has no fur-
ther use for his claim, but asks that the plaintiff be
not allowed to go back of the judgment against Mc-
Arthur Bros. Co., and that he be estopped because he
suffered him to sue McArthur instead of himself,
although he had a valid claim against neither.  It is
not claimed that he had a right to recover against any-
one, but that he did recover, and it seems to be thought
that the courts should aid him to perpetrate a fraud,
through an estoppel, by the application of a technical
rule which is said to preclude the plaintiff from disputing
the validity of Bellaire's judgment.  The substratum of
estoppel is the fraudulent character of the representation,
and its effect in wronging the person who relies upon the
estoppel.  But here it is proposed to use it as a sword,
and to perpetrate a wrong upon the plaintiff by subject-
ing his property to a judgment confessedly unjust, not
only against McArthur Bros. Co., the defendants therein,
but as against the plaintiff himself.

We think the circuit judge did not err in directing a
verdict for the plaintiff, and his judgment is affirmed.

The other Justices concurred.